United States District Court
Southern District of Texas
**ENTERED**
April 28, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIMOTHY WILLIAMS, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-3027 |
| | § | |
| HOUSTON COMMUNITY COLLEGE, *et* | § | |
| *al*., | § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy Williams ("Williams"), who is proceeding *pro se* and *in forma pauperis*, contends that he was improperly suspended from Defendant Houston Community College ("HCC"). Williams has sued HCC and three of its employees under 42 U.S.C. § 1983 ("Section 1983"); the Americans with Disabilities Act of 1990 ("the ADA"); Section 504 of the Rehabilitation Act ("the RA"); Title VI of the Civil Rights Act of 1964 ("Title VI"); and Texas state law. (Dkt. 33). Defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendants' motion (Dkt. 44) is **GRANTED** as to Williams's claims under federal law, which are **DISMISSED WITH PREJUDICE**. Williams's claims under Texas state law are **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1367(c).

### I.    BACKGROUND

Williams is a student at HCC. (Dkt. 33 at p. 2). In his live complaint, Williams alleges that he has "an exemplary academic record" and has made the Dean's List and the

1 / 19

Honor Roll with "a consistent B/A GPA[.]" (Dkt. 33 at p. 2). However, Williams further alleges that he "has experienced recurring issues with HCC's Financial Aid Department, necessitating Satisfactory Academic Progress (SAP) appeals[1] every semester despite his academic performance." (Dkt. 33 at p. 2). This case arises out of the tension between Williams and HCC's Financial Aid Department, which evidently boiled over in June of 2025.

Williams alleges that, on June 2, 2025, he "sent emails to HCC Financial Aid regarding urgent 'to-do list' issues that threatened his academic progress." (Dkt. 33 at p. 2). The exact content of the emails is unclear, but Williams describes the emails in his pleading as "concerning financial aid compliance issues" and "asserting federal compliance issues related to financial aid." (Dkt. 33 at pp. 3–4). Williams then went in person to HCC's Financial Aid office. (Dkt. 33 at p. 2). What happened during Williams's visit to the Financial Aid office is also unclear; but eight days later Defendant Dr. LaTonya Brown ("Brown"), HCC's Associate Dean for Student Engagement and Success, emailed Williams a letter indicating that, "[a]s a result of an incident that occurred on June 2, 2025," Williams had been accused of violating HCC policies prohibiting bullying, threatening/violent behavior, and disruptive activity. (Dkt. 33 at p. 2; Dkt. 44-1).

---

[1] Williams relies on federal financial aid under Title IV of the Higher Education Act of 1965 ("the HEA"). (Dkt. 33 at p. 4). Under the applicable federal regulations, "[a]n institution must establish a reasonable satisfactory academic progress policy for determining whether an otherwise eligible student is making satisfactory academic progress in his or her educational program and may receive assistance under the title IV, HEA programs." 34 C.F.R. § 668.34(a). An "appeal" is defined in the applicable federal regulations as "a process by which a student who is not meeting the institution's satisfactory academic progress standards petitions the institution for reconsideration of the student's eligibility for title IV, HEA program assistance." 34 C.F.R. § 668.34(b).

In her letter, Brown informed Williams that he was required to schedule an administrative conference with her office and to complete an administrative conference checklist form. (Dkt. 44-1 at p. 3). Brown's letter also included attachments and a hyperlink containing "information regarding student rights and responsibilities, the HCC Student Code of Conduct, and Disciplinary Procedures[.]" (Dkt. 44-1 at pp. 3–4).

Williams scheduled an administrative conference with Brown. (Dkt. 33 at p. 2). At that conference, Williams "denied any misconduct and repeatedly requested review of available video footage from the Financial Aid Department area to provide objective evidence." (Dkt. 33 at p. 2). However, according to Williams, Brown "refused to consider or review the objective video evidence," instead relying "solely on unidentified witness statements" and the statement of Williams's accuser, "the Financial Aid supervisor[.]" (Dkt. 33 at pp. 2–3) (quotation marks omitted).

After the administrative conference, Brown emailed Williams another letter. (Dkt. 33 at p. 2; Dkt. 44-2). In her second letter, Brown informed Williams that based on the administrative conference, her investigation, her review of "Faculty/Staff interviews[,]" and her review of Williams's prior disciplinary history, she had determined that Williams was "Responsible" for the policy violations of which he was accused. (Dkt. 33 at p. 2; Dkt. 44-2 at p. 2). Brown placed a disciplinary hold on Williams's student account and suspended Williams for a six-month period during which Williams was "not allowed to be present on any HCC campus or any HCC facility." (Dkt. 33 at p. 2; Dkt. 44-2 at p. 2). Brown's letter further notified Williams that he had the "right to appeal [her] decision to the Student Disciplinary Hearing Committee" if he made a request "in writing on or before

the seventh working day following the administrative disposition." (Dkt. 44-2 at p. 2). Brown's letter included a hyperlink to the relevant procedures. (Dkt. 44-2 at p. 2). Williams does not allege that he appealed Brown's decision.

In this lawsuit, Williams has sued HCC, Brown, Cherylyn Joseph ("Joseph"), and Shanetta Burke ("Burke") for declaratory and injunctive relief and $20,000,000.00 in damages. (Dkt. 33 at pp. 1–2, 5). Beyond stating that they are employees of HCC, Williams's pleading does not explain who Joseph and Burke are; Burke is briefly mentioned once in Williams's factual allegations (Dkt. 33 at p. 3), and Joseph is never mentioned at all. Defendants have moved to dismiss the claims against them under Rule 12(b)(6).

## II.    RULE 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a pleading's compliance with this requirement and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations, when taken as true and viewed in the light most favorable to the plaintiff, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). As the Fifth Circuit has further clarified:

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This includes the basic requirement that the facts plausibly establish each required element for each legal claim. However, a complaint is insufficient if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action.

*Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation marks and citations omitted).

Courts construe pleadings filed by *pro se* litigants like Williams under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Payton v. United States*, 550 Fed. App'x 194, 195 (5th Cir. 2013) (affirming dismissal of *pro se* complaint that "failed to plead with any particularity the facts that gave rise to [the plaintiff's] present cause of action") ("[T]he liberal *pro se* pleading standard still demands compliance with procedural standards.").

When considering a motion to dismiss, a district court generally may not go outside the pleadings. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). The court's review is limited to the complaint; any documents attached to the complaint; any documents attached to the motion to dismiss that are central to the claim and referenced by

the complaint; and matters subject to judicial notice under Federal Rule of Evidence 201. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

## III.   THE SECTION 1983 CLAIMS

The Court now turns to Williams's claims under Section 1983. "To state a claim under §1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). Williams's claims under Section 1983 stem from the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution; the "Fifth Amendment's presumption of innocence[;]" and the FAFSA Simplification Act. (Dkt. 33 at pp. 3–4). Williams also brings a civil rights claim for retaliation. (Dkt. 33 at p. 4).

The Court concludes that Williams has failed to state a viable claim under Section 1983.

*—HCC*

Williams's Section 1983 claims against HCC fail because Williams has not adequately pled the elements of municipal liability. *See Coffman v. Alvin Community College*, 642 Fed. App'x 472, 475–76 (5th Cir. 2016). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 847 (5th Cir. 2009) (quotation marks omitted). To

establish municipal liability under Section 1983, a plaintiff is required to show: (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the execution of that official policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Under Texas law, the policymaker for a community college is generally its Board of Trustees. *Coffman*, 642 Fed. App'x at 476.

Williams has not pled facts showing that an HCC policy or custom provided the "moving force" behind a violation of his Constitutional rights, and he has not identified any policymaker in his pleading. Accordingly, Williams's allegations fail to state a viable claim under Section 1983 against HCC.

—*Brown, Joseph, and Burke*

Williams's Section 1983 claims against Brown, Joseph, and Burke are also inadequately pled. Brown, Joseph, and Burke are employees of HCC; and Williams must overcome their qualified immunity defense in order to state a Section 1983 claim against them. *Wrenn v. Houston Community College System*, 252 F.3d 1356, 2001 WL 422724, at *1 (5th Cir. Apr. 2, 2001); *see also Carlton v. Houston Community College System*, No. 4:08-CV-3239, 2010 WL 11512200, at *3 (S.D. Tex. Nov. 30, 2010), *adopted*, Southern District of Texas case number 4:08-CV-3239 at docket entry 112, *aff'd*, 464 Fed. App'x 325 (5th Cir. 2012). His allegations fail to do so.

7 / 19

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). When a defendant asserts a qualified immunity defense in a motion to dismiss, the district court must "carefully scrutinize the complaint . . . because qualified immunity means immunity from having to stand trial, not simply immunity from monetary liability." *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (quotation marks omitted).

The burden is on the plaintiff to demonstrate the inapplicability of the qualified immunity defense. *Id.* A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* The plaintiff "must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan*, 659 F.3d at 371 (quotation marks omitted). Courts have discretion to decide which prong of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When attempting to show that a right was clearly established at the time of the challenged conduct, "[i]t is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Vann v. City of Southaven, Mississippi*, 884 F.3d 307, 310 (5th Cir. 2018) (quotation marks omitted) ("Plaintiff . . . cited nary a pre-existing or precedential case. That alone dooms his case here."). The inquiry "must be undertaken in light of the specific context of the particular case, not as a broad general

proposition." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (brackets and ellipsis omitted). "Although qualified immunity does not require a case in point, existing precedent must have placed the statutory or constitutional question beyond debate[,]" such that "every reasonable official would understand that what she is doing violates that right." *Id*. (brackets and quotation marks omitted).

i.      Procedural Due Process

Williams bases his first Section 1983 claim on the procedural due process component of the Fourteenth Amendment's Due Process Clause. (Dkt. 33 at p. 3). Williams contends that Brown's alleged "refusal to review video evidence and denial of witness identities resulted in a fundamentally unfair and biased investigation." (Dkt. 33 at p. 3). Williams further contends that Brown's investigation "violated HCC's own Student Rights & Responsibilities policy[,] which guarantees students the right to review supporting documentation, know witness identities, and present evidence." (Dkt. 33 at p. 4).

Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Generally, the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail." *Plummer v. University of Houston*, 860 F.3d 767, 773 (5th Cir. 2017). However, the

9 / 19

"interpretation and application of the Due Process Clause are intensely practical matters and the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Id.* (quotation marks and ellipsis omitted). Ultimately, the procedural due process inquiry "is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (quotation marks omitted). For instance, a brief suspension may require only "an informal give-and-take" between the student and the administration, while expulsion for misconduct generally "requires notice and some opportunity for hearing[.]" *Plummer*, 860 F.3d at 773. Furthermore, "[t]here is not a violation of due process every time a university or other government entity violates its own rules. Such action may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation." *Levitt v. University of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985); *see also Brister v. Smith*, No. 5:12-CV-94, 2013 WL 12091639, at *3 (N.D. Tex. Oct. 31, 2013), *aff'd*, 565 Fed. App'x 319 (5th Cir. 2014) ("Because Brister was afforded a level of due process required by the Constitution, he can make no viable claim notwithstanding Tech's ostensible deviation from its own procedures."). The "fundamental requirement" of procedural due process "is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quotation marks omitted).

Williams has cited no analogous due process cases. That failure is fatal to his attempt to overcome qualified immunity, as, again, "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable

situation[,]" *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 86 (1978) (brackets omitted), and it "is well established that, even where the sanction is patently criminal, unless an action violates a specific provision of the Constitution, the due process clause requires only the most basic procedural safeguards." *Crowe v. Smith*, 151 F.3d 217, 231 (5th Cir. 1998) (quotation marks and brackets omitted). Moreover, Williams's rather vague descriptions of the administrative conference with Brown and the confrontation with the Financial Aid supervisor make it extremely difficult to determine both the risk of an erroneous deprivation of Williams's interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards.

In the end, the Court cannot say, based on Williams's allegations, that Williams was denied an opportunity to be heard at a meaningful time and in a meaningful manner under the circumstances; and Williams has certainly not shown that existing precedent placed the question of any defendant's liability beyond debate. Accordingly, the Court cannot conclude that Brown, Joseph, and Burke should lose their qualified immunity against Williams's procedural due process claims.

### ii.   Equal Protection

Williams bases his second Section 1983 claim on the Fourteenth Amendment's Equal Protection Clause. (Dkt. 33 at pp. 3–4). Williams contends that Brown's investigation of the allegations against him reflected discrimination based on Williams's "disability, race/color, and sex[,]" along with his "status as an ex-felon[.]" (Dkt. 33 at p. 3).

Generally, to establish a claim under the Equal Protection Clause, a plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004). "Being similarly situated is key. Because the clause's protection reaches only dissimilar treatment among similar people, if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action does not deny equal protection of the laws." *Hines v. Quillivan*, 982 F.3d 266, 272–73 (5th Cir. 2020) (quotation marks omitted). To determine whether persons or groups are similarly situated, the Court must "inquire as to whether they are in all relevant respects alike." *Texas Entertainment Association, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quotation marks omitted).

Williams does not plead any facts showing that any comparator was treated differently from him despite being in all relevant respects similarly situated to him. To the contrary, Williams never names a comparator; and he provides only conclusory allegations of various forms of discrimination on the part of Defendants. Moreover, Williams points to no case in which the qualified immunity defense was defeated under sufficiently similar circumstances. Accordingly, the Court cannot conclude that Brown, Joseph, and Burke should lose their qualified immunity against Williams's equal protection claims.

### iii.    Fifth Amendment

Williams bases his third Section 1983 claim on the "Fifth Amendment's presumption of innocence[.]" (Dkt. 33 at p. 4). The Fifth Amendment's Due Process Clause only applies to actions of the federal government. *Morin v. Caire*, 77 F.3d 116, 120 (5th

12 / 19

Cir. 1996). Williams does not allege that Brown, Joseph, and Burke are federal actors. Accordingly, the Court cannot conclude that Brown, Joseph, and Burke should lose their qualified immunity against Williams's Fifth Amendment claims.

iv.      The FAFSA Simplification Act

Williams bases his fourth Section 1983 claim on the FAFSA Simplification Act. (Dkt. 33 at p. 4). "FAFSA" is an acronym for "Free Application for Federal Student Aid." *See* https://www.congress.gov/crs-product/R46909. The FAFSA Simplification Act is contained in Title VII, Division FF of Public Law 116-260, and it amended the Higher Education Act of 1965. *See* Pub. L. 116-260, 134 Stat. 1182, 3137. In support of his claim under the FAFSA Simplification Act, Williams contends that "Defendants' actions unlawfully affected [his] education and access to federal financial aid[.]" (Dkt. 33 at p. 4).

Williams's claim under the FAFSA Simplification Act fails because he has not shown that the FAFSA Simplification Act unambiguously gives rise to privately enforceable, substantive rights. To state a valid claim under Section 1983, a plaintiff must allege a violation of rights secured by the Constitution or laws of the United States. *Resident Council of Allen Parkway Village v. United States Department of Housing & Urban Development*, 980 F.2d 1043, 1050 (5th Cir. 1993). If the source of the alleged right is a federal statute, then "[i]t is essential to a private enforcement action under § 1983 . . . that the federal statute in question *unambiguously* give rise to privately enforceable, substantive rights." *Johnson v. Housing Authority of Jefferson Parish*, 442 F.3d 356, 359 (5th Cir. 2006) (emphasis in *Johnson*); *see also Thurman v. Medical Transportation Management, Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) ("[F]ederal law must provide an

unambiguously conferred right with an unmistakable focus on the benefitted class.")

(quotation marks omitted). "The inquiry in this context is virtually the same as that

involved in private rights of action implied directly from a federal statute rather than by

way of § 1983." *Johnson*, 442 F.3d at 359. "It is presumed Congress did not intend to create

a private enforceable right; the burden is on the plaintiff to show otherwise." *Southwestern*

*Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008); *see also Acara*

*v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("[T]he plaintiff has the relatively heavy burden

to show Congress intended private enforcement, and must overcome the presumption that

Congress did not intend to create a private cause of action."). "[I]n the end, very few

statutes are held to confer rights enforceable under § 1983." *Johnson*, 442 F.3d at 360.

Williams has not carried his burden of showing that he may base a Section 1983

action on either the FAFSA Simplification Act or the Higher Education Act of 1965. *See*

*White v. Apollo Group*, 241 F. Supp. 2d 710, 713 (W.D. Tex. 2003) ("[C]ourts have refused

to find a private right of action implied in the Higher Education Act for a student borrower

against the educational institution, the lender or the loan guarantee agency to remedy

alleged violations of the Higher Education Act in the granting or denial of federal financial

aid.") (collecting cases). Accordingly, the Court cannot conclude that Brown, Joseph, and

Burke should lose their qualified immunity against Williams's claims under the FAFSA

Simplification Act.

v.    Retaliation

Williams's fifth Section 1983 claim is a claim for retaliation. Williams's retaliation

claim appears to be grounded in the First Amendment; Williams alleges that "Defendants

retaliated against [him] for asserting his rights under federal law, specifically by issuing false conduct charges . . . immediately after [he] sent emails concerning financial aid compliance issues." (Dkt. 33 at p. 4).

In order to successfully establish a First Amendment retaliation claim, Williams must show that: (1) he was engaged in Constitutionally protected activity; (2) Defendants' actions "caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity[;]" and (3) Defendants' actions "were substantially motivated against [his] exercise of [C]onstitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). To prevail on such a claim, a plaintiff must show that the government defendant's "retaliatory animus" was a "but-for cause" of the plaintiff's subsequent injury, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021) (quotation marks omitted). "A First Amendment retaliation claim fails if the action would have been taken anyway." *Id.* (quotation marks omitted).

Williams's allegations are not sufficient to state a claim for retaliation. Even taken as true and viewed in the light most favorable to Williams, the allegations in Williams's pleading provide no support for Williams's contention that he was suspended in retaliation for his emails regarding financial aid compliance issues. Rather, the facts pled in Williams's complaint, along with Brown's letters, establish that Williams was suspended because he allegedly aggressively confronted the Financial Aid supervisor in person at the Financial Aid office. Brown based her disciplinary determination on witnesses to the confrontation, along with Williams's prior disciplinary history. There is no mention of

Williams's emails in Brown's letters to Williams, and Williams's own factual allegations do not show that Brown discussed the emails with him. Williams has not pled facts showing that he would not have been suspended absent a retaliatory motive. Accordingly, the Court cannot conclude that Brown, Joseph, and Burke should lose their qualified immunity against Williams's claims for retaliation.

## IV.    THE ADA AND RA CLAIMS

Williams also brings claims under the ADA and the RA. (Dkt. 33 at p. 3). Williams fails to state a viable claim under either the ADA or the RA against any of the defendants.

"To make out a prima facie case under Title II [of the ADA], a plaintiff must show (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Windham v. Harris County, Texas*, 875 F.3d 229, 235 (5th Cir. 2017) (quotation marks omitted). The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). A major life activity can also include "the operation of a major bodily function[.]" 42 U.S.C. § 12102(2)(B). "An

16 / 19

individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3).

The ADA's definition of disability also applies to claims under the RA. *Kemp v. Holder*, 610 F.3d 231, 234–35 (5th Cir. 2010). "The only material difference between" the legal standards set out in the ADA and the RA "lies in their respective causation requirements." *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). The RA requires a plaintiff to show discrimination "solely by reason of her or his disability," while under the ADA "discrimination need not be the sole reason for the exclusion of or denial of benefits to the plaintiff." *Id.* (quotation marks and emphasis omitted).

Williams's claims under the ADA and the RA are inadequately pled. "As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability." *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). Williams alleges in a conclusory manner that he is disabled; but he provides no facts establishing that he has, or at least was regarded by the defendants as having, some physical or mental impairment that falls within the relevant statutory definitions. Moreover, Williams has not pled any facts showing that his alleged disability, whatever it may be, had anything at all to do with his suspension. Accordingly, the Court concludes that Williams has failed to state a claim under either the ADA or the RA.

## V.    THE TITLE VI CLAIMS

Williams also brings claims under Title VI. (Dkt. 33 at p. 4). Williams fails to state a viable claim under Title VI against any of the defendants.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Title VI prohibits only intentional discrimination." *Wright v. Arlington Independent School District*, 834 Fed. App'x 897, 902 (5th Cir. 2020) (quotation marks omitted). To plead the requisite discriminatory intent, a Title VI plaintiff must allege that he was treated differently "because of" his race, color, or national origin. *Campbell v. Coppell Independent School District*, No. 24-10318, 2025 WL 384410, at *2 (5th Cir. Feb. 4, 2025); *see also Rollerson v. Brazos River Harbor Navigation District of Brazoria County, Texas*, 6 F.4th 633, 639 (5th Cir. 2021).

Williams's claims under Title VI are inadequately pled. To begin with, Williams's complaint "never clarifies [his] race[,]" color, or national origin. *Cf. Campbell*, 2025 WL 384410 at *2. Moreover, Williams offers only conclusory statements and pleads no facts showing that he was treated differently from other students because of his race, color, or national origin. Accordingly, the Court concludes that Williams has failed to state a claim under Title VI.

## VI.    THE STATE LAW CLAIMS

Finally, Williams has also brought claims under Texas state law. (Dkt. 33 at p. 4). The Court declines to exercise supplemental jurisdiction over those claims and will dismiss

18 / 19

them without prejudice under 28 U.S.C. § 1367(c). *See Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial[.]").

## VII.   CONCLUSION

For the reasons set out above, Defendants' motion to dismiss (Dkt. 44) is **GRANTED** as to Plaintiff's claims under federal law, which are **DISMISSED WITH PREJUDICE**. Plaintiff's claims under Texas state law are **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1367(c).

All other pending motions are **DENIED AS MOOT**. The Court will enter a separate final judgment.

SIGNED at Houston, Texas on April 28, 2026.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE